STATE OF NEBRASKA, APPELLEE, v. ROBERT WILLIAM LOSIEAU, APPELLANT.

117 N. W. 2d 775

Filed November 9, 1962. No. 35231.

William G. Line, for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is a criminal action wherein in the district court for Dodge County, Nebraska, Robert William Losieau, defendant, appellant here, was, in an information filed by the county attorney in the name of the State of Nebraska as plaintiff, appellee here, charged with the offense of breaking and entering, and further that he was an habitual criminal. The defendant was tried to a jury and convicted of the offense charged. On a later hearing in the action to the court he was found to be an habitual criminal and was sentenced to serve a term of 20 years in the State Penitentiary at Lincoln, Nebraska.

The defendant filed a motion for new trial which was overruled. From the order overruling this motion and from the judgment sentencing him the defendant has appealed.

As grounds for reversal of the judgment the defendant's brief contains eight assignments of error. Only

one of these requires separate consideration. The other seven deal with a single subject matter and therefore do not require separate consideration.

The one requiring separate consideration is the seventh. By this one it is contended that the verdict is not sustained by sufficient evidence. It must be regarded as having no merit. The brief of the defendant in the following words substantially so declares: "On the record in this case if the defendant's witnesses were telling the truth, defendant could not possibly be guilty. If the accomplices were telling the truth defendant could not possibly be innocent. It was the task of the jury to weigh the evidence and decide where the truth lay."

By the other seven assignments of error it is urged that the defendant was tried in an atmosphere wherein the danger of the jury being improperly influenced in its determination of guilt or innocence prevented it from being said that the defendant was accorded a fair trial. Specifications urged are that in consequence of this the court erred in failing to grant a change of venue; it erred in failing to quash the jury panel; it erred in failing to grant a mistrial; it erred in failing to dismiss the action; and it erred in failing to grant a new trial.

There is no showing made the effect of which was to say, or from which a reasonable inference could be drawn, that the jury was improperly influenced, but only that it could have been. The defendant does not contend otherwise.

One theory of the presentation of the defendant is that if a jury or its members had knowledge or came into possession of knowledge during or before a trial that a defendant on trial for a criminal offense and as an habitual criminal, the knowledge or possibility of acquisition of knowledge that he was charged with being an habitual criminal would render a verdict of guilty invalid, no matter whether that information was disclosed by the proceedings on the trial or from some other source or, as applied to this case, through publica-

tions contained in newspapers. The defendant relies for support upon the following from section 29-2221, R. R. S. 1943: "Where punishment of an accused as an habitual criminal is sought, the facts with reference thereto must be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted, but the fact that the accused is charged with being an habitual criminal shall not be an issue upon the trial of the felony charge and shall not in any manner be disclosed to the jury."

The reliance of the defendant is in particular on the words "and shall not in any manner be disclosed to the jury."

The consideration here is, by the record, limited to the question of whether or not there was a possibility that during the trial the jury obtained information from newspapers that the defendant was charged as an habitual criminal, and not to such information obtained theretofore or through the processes of the trial.

The record negatives prior information and information obtained through trial processes. After 24 prospective jurors were called they were separately examined and each by answer disclaimed possession of any information the effect of which would be to say that he or she knew that the defendant was charged as an habitual criminal. It will be said here that each denied knowledge of anything which would prevent himself or herself from becoming a fair juror. From this group the jury was selected. There is nothing in the record to show and it is not suggested in the brief of the defendant that any such information was disclosed at the trial.

Coming back then to the true meaning of the words "and shall not in any manner be disclosed to the jury" it can be said that they have reference only to what shall or rather what shall not be disclosed at the trial. The clear and unmistakable meaning is that the charge of being an habitual criminal shall be contained as an

issue in the information but that issue may not be disclosed to the jury at the trial. The language is incapable of any other meaning. The jury does not come into existence until the commencement of the trial and it ends with the verdict.

The conclusion reached is that by the language "and shall not in any manner be disclosed to the jury" it was the intention of the Legislature that it should have application only to the time during which a case is being tried. Thus it must be said that under the terms of this section of the statute the defendant is entitled to no relief.

This leaves only for consideration the general question of whether or not there was any reasonable probability that a substantial right of the defendant independent of statute was impaired by the fact that members of the jury could have or did before or during the trial read in local newspapers accounts of the charge or charges against the defendant.

This question must be decided in the light of the facts and circumstances, as they have been disclosed, and recognized principles of law. One of these is: "A motion for a change of venue in a criminal case is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed unless an abuse of such discretion is disclosed." Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380. See, also, Simmons v. State, 111 Neb. 644, 197 N. W. 398; Peterson v. State, 116 Neb. 268, 216 N. W. 823; Murray v. State, 119 Neb. 16, 226 N. W. 793.

Another statement of principle having application here is that in a situation where it is contended that because of unfavorable publicity through newspaper articles the defendant did not have a fair trial and on account thereof seeks to have a verdict of guilty set aside, the trial court has a large discretion in ruling on the question of prejudice. In each such instance the case must turn on its special facts. See, Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20

Ann. Cas. 1138; Marshall v. United States, 360 U. S. 310, 79 S. Ct. 1171, 3 L. Ed. 2d 1250.

In Schreiner v. State, 155 Neb. 894, 54 N. W. 2d 224, it was pointed out in an instance where a jury had used a dictionary that only such conduct of the jury as is calculated to prejudice the substantial rights of the defendant is ground for setting aside a verdict.

It has already been pointed out that there was information from each and all of the jurors that they had read nothing prior to the trial that would influence a verdict in the case. Neither at nor after the trial was anything presented by affidavit which carried any fact or inference that any juror was or could have been influenced by any kind or character of publication.

There are clippings from newspapers in the bill of exceptions which contain a statement of the charges against the defendant, but it is not made to appear that any of these were ever read by or called to the attention of the members of the jury or any of them either before or during the trial.

In the light of all this it may not well be said that the trial court failed to exercise a sound discretion in refusing to set aside the verdict and grant the defendant a new trial.

The judgment of the district court is affirmed.

AFFIRMED.